UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE BARTON *and* ZACHARY
ZAITZEFF,

                        Plaintiffs,

            v.

NORTHEAST TRANSPORT, INC., *and*
LAND-AIR EXPRESS OF NEW
ENGLAND, LTD.,

                        Defendants.

No. 21-CV-326 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Catherine Barton
Zachary Zaitzeff
Millbrook, NY
*Pro Se Plaintiffs*

Jennifer H. McGay, Esq.
Lewis Johs Avallone Aviles, LLP
Islandia, NY
*Counsel for Defendant Northeast Transport, Inc.*

KENNETH M. KARAS, United States District Judge:

        Catherine Barton ("Barton") and Zachary Zaitzeff ("Zaitzeff"; collectively, "Plaintiffs")

bring this action pro se against Northeast Transport, Inc. ("Northeast Transport") and Land-Air

Express of New England, Ltd. ("Land-Air"; collectively, "Defendants"), alleging that

Defendants acted negligently and inappropriately, resulting in the destruction of goods Plaintiffs

produced for retail sale and, ultimately, the collapse of Plaintiffs' business.  (*See* Compl. § 3.1

(Dkt. No. 1).)  Before the Court is Northeast Transport's Motion To Dismiss (the "Motion"),

filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Not. of Mot. (Dkt. No.

33).)[1]  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Complaint and are assumed to be true for

the purpose of resolving the instant Motion.

Plaintiffs were the proprietors of a small family business in Verbank, Dutchess County,

New York.  (Compl. § 3.7.)  In that capacity, Plaintiffs created "low calorie and low sugar sodas

packaged in 12[-]ounce clear glass bottles with a screw off cap" that were sold in the lower

Hudson Valley region.  (*Id.* § 3.4.)

On or about January 15, 2018, Plaintiffs, as proprietors, engaged Northeast Transport to

transport the bottles from the bottling facility in Rochester, New York, to Plaintiffs' business in

Verbank.  (*Id.* § 3.7.)  As part of this arrangement, Plaintiffs had "called and expressed concern"

to Northeast Transport that the freezing temperatures meant the glass bottles could freeze and

break.  (*Id.* § 3.11.)  Plaintiffs were assured by Northeast Transport "not to worry about it

because the company and its driver would use their discretion in taking precautions when picking

up and delivering the soda bottles."  (*Id.* § 3.12.)  Notwithstanding these assurances, Northeast

Transport had contracted with Land-Air to perform the actual transportation.  (*Id.* § 3.9.)

Northeast Transport did not inform Plaintiffs of this arrangement.  (*Id.*)

By January 15, 2018, the bottling facility had bottled 183 cases of the soda, and each case

contained 24 bottles, totaling 4,392 bottles.  (*Id.* § 3.8.)  That day, Land-Air picked up the bottles

---

[1] Land-Air has not appeared in this Action and has not joined Northeast Transport's
Motion.

from the bottling facility in Rochester.  (*Id.* § 3.10.)  The bottles were then held in a non-insulated truck for two days.  (*Id.*)[2]

Upon delivery in Verbank—where the weather stood at sub-freezing temperatures, (*id.* § 3.13)—"all 183 soda cases were frozen and destroyed," (*id.* § 3.14).  Northeast Transport did not purchase insurance for the shipment.  (*Id.* § 3.15.)

At the time of this incident, Plaintiffs' business was "in limbo and in dire straits with substantial customers lost."  (*Id.* § 3.16.)  Plaintiffs lost considerable revenue from having been unable to sell the cases of soda.  (*Id.*)  As a result, Plaintiffs had to shut down the business, at first doing so temporarily.  (*Id.*)

During the initial shutdown period, customers refused to make additional orders for fear that the business would not be able to recover and execute prospective orders, thereby perpetuating and exacerbating the incident's damage.  (*See id.* §§ 3.17.a–17.b.)  Given an absence of future orders amid continued expenses and reputational damage, Plaintiffs were forced to permanently close their business.  (*Id.* §§ 3.17.b–17.d.)

B.  Procedural Background

Plaintiffs' Complaint was docketed on January 7, 2021.  (*See generally* Compl.)  Northeast Transport filed a motion to dismiss and supporting papers on June 4, 2021.  (*See* Not. of Mot. (Dkt. No. 14); Declaration of Jennifer McGay in Supp. of Motion (Dkt. No. 15); Mem. of Law in Supp. of Mot. (Dkt. No. 16).)  This initial motion was denied without prejudice three days later for failure to comply with the Court's Individual Rules.  (*See* Dkt. No. 18.)  On June 25, 2021, Plaintiffs submitted what it titled a "Statement & Motion for Summary Judgment."

_____

[2] The Complaint does not make clear if the bottles were held prior to the commencement of the transportation or if this two-day span was during the transportation itself.  (*See id.*)

3

(*See generally* Statement & Motion for Summary Judgment ("Statement") (Dkt. No. 25).) Subsequently, the Court held a pre-motion conference on July 13, 2021, (*see* Dkt. (minute entry of July 13, 2021)), after which the Court issued a scheduling order, (*see* Dkt. No. 31). Subsequently, and adhering to the scheduling order, Northeast Transport re-filed the Motion To Dismiss and filed the supporting papers as exhibits thereto.  (*See* Not. of Mot. (Dkt. No. 33); Declaration of Jennifer McGay in Supp. of Motion ("McGay Decl.") (Dkt. No. 33-1); Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 33-8).)  Plaintiffs timely submitted a brief in opposition to the Motion.  (*See* Pls.'s Mem. of Law in Opp. of Mot. to Dismiss ("Pls.'s Mem.") (Dkt No. 37).)[3]  Northeast Transport filed a reply brief on September 9, 2021.  (*See* (Def.'s Reply Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Reply Mem.") (Dkt. No. 35).)

For the reasons discussed below, the Motion is granted.

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, No. 21-639, 2021 WL 5286647, at *1 (2d

---

[3] Plaintiffs served Northeast Transport with a copy of its brief, but inadvertently did not file a copy on the docket.  Accordingly, the brief was filed on the docket by the Court and backdated to denote Plaintiffs' compliance with the scheduling order.  Additionally, Plaintiffs' brief is titled "Statement and Motion for Setting Trial Date."  (*See generally* Pls.'s Mem.*)* Considering that the document substantively responds to Northeast Transport's memorandum of law in support of the Motion, the Court considers this document Plaintiffs' response and styles it a brief in opposition to the Motion.

4

Cir. Nov. 15, 2021) (summary order) ("The standard of review for a motion to dismiss under Rule 12(b)(1) is substantively 'identical' to the standard for a Rule 12(b)(6) motion."); *Marquez v. Hoffman*, No. 18-CV-7315, 2021 WL 1226981, at *8 n.8 (S.D.N.Y. Mar. 31, 2021) ("The standard of review for 12(b)(1) motions is 'substantively identical' to Rule 12(b)(6) motions." (quoting *Lerner*, 318 F.3d at 128)).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a

defendant proffers evidence outside the pleadings a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).  If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.

### 2.  Rule 12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d

306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro se, the Court may consider

"materials outside the complaint to the extent that they are consistent with the allegations in the

complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug.

2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his

opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec.

15, 2010) (italics omitted).  Moreover, where, as here, a plaintiff proceeds pro se, the court must

"construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).[4]

Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

Northeast Transport makes the following arguments as to why the Court should dismiss the Complaint: (1) the Court lacks subject matter jurisdiction; (2) Plaintiffs lack standing to bring the claims alleged; (3) state law claims are preempted by the Federal Administration Authorization Act; and (4) a challenge to the state court's findings that the claims are preempted is barred by res judicata and/or collateral estoppel.  (Def.'s Mem. 1.)  Northeast Transport also argues that Plaintiffs' demand for punitive and consequential damages must be dismissed.  (*Id.*)  The Court addresses these arguments only to the extent necessary to decide the instant Motion.

1.  Subject Matter Jurisdiction

Northeast Transport argues that there is no subject matter jurisdiction, because Plaintiffs fail to allege a federal or constitutional violation and there is a lack of diversity.  (*See* Def.'s Mem. 5 & n.3.)  Plaintiffs assert in that they filed the case in federal court because they first brought it to New York State Supreme Court, Dutchess County, only to have that tribunal

---

[4] That courts are to construe pro se complaints liberally and interpret them to raise the strongest possible arguments applies to the adjudication of motions to dismiss under both Rule 12(b)(1), *see Sykes*, 723 F.3d at 403, as well as Rule 12(b)(6), *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

instruct them that the proper venue for their claim was in fact federal court. (*See* Pls.'s Mem. ¶¶ 10–11; *see also* Statement ¶¶ 10–12.)

A federal district court may exercise subject matter jurisdiction over a cause of action only if there exists either: (1) "federal question" jurisdiction, which requires a claim "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; or (2) "diversity" jurisdiction, which requires diversity of citizenship between the plaintiff and all defendants and the amount in controversy exceeds "the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). "These jurisdictional grants . . . [e]ach serve[] a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which to vindicate federal rights, whereas diversity jurisdiction provides a neutral forum for parties from different States." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746, *reh'g denied*, 140 S. Ct. 17 (2019) (quotation marks omitted) (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U. S. 546, 552 (2005)).

"[F]ailure of subject matter jurisdiction is not waivable." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Therefore, an action must be dismissed if subject matter jurisdiction is found wanting. *See* Fed. R. Civ. P. 12(h)(3); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action . . . for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it[.]") (quotation marks omitted) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Lyndonville*, 211 F.3d at 700–01 ("If subject matter jurisdiction is lacking, the action must be dismissed."); *Manway Constr. Co. v. Housing Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the

proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory.").

### a.  Federal Question Jurisdiction

To invoke the Court's federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  An action arises under federal law if the cause of action "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734–35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (internal quotation marks omitted)).  Importantly, "[m]ere invocation of federal-question jurisdiction, without any facts demonstrating a federal-law claim, does not create federal-question jurisdiction."  *Suarez v. Marcus*, No. 20-CV-11051, 2021 WL 603048, at *2 (S.D.N.Y. Feb. 12, 2021) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188–89 (2d Cir. 1996)).

Northeast Transport is correct that Plaintiffs nominally allege a federal question in the Complaint.  (*See* Def.'s Mem. 5 (citing Compl. § II (Basis for Jurisdiction)).)  Based on a review of the facts and claims, however, "Plaintiff[s] do[] not allege any facts suggesting that federal question jurisdiction is proper."  *Abdul Hakim Bey v. United States Legislature*, No. 17-CV-7569, 2017 WL 6611052, at *2 (S.D.N.Y. Oct. 25, 2017) (citation omitted).  Specifically, no federal law or constitutional provision is alleged to have been violated; rather, the Complaint and the facts therein sound solely in negligence and a breach of the covenant of good faith and fair dealing.  (*See* Compl. § 4.)

"Negligence is a state common law claim."  *Cochran v. CCA-LAC Med. Dep't*, No. 06-CV-116, 2007 WL 431118, at *3 (D. Vt. Feb. 5, 2007); *see also Logan v. Town of Windsor, New*

*York*, 833 F. App'x 919, 920 (2d Cir.) (summary order) (holding that the court did not have subject matter jurisdiction to hear a case because "[t]he complaint relied on no provision of federal law and instead sought relief only for claims of negligence and defamation, both of which are common-law torts governed by state law"), *cert. denied*, 141 S. Ct. 2769 (2021), *reh'g denied*, 142 S. Ct. 330 (2021); *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 574 (S.D.N.Y. 2011) (referring to negligence claims as "state common law negligence claims"), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012).  So too is a breach of the implied covenant of good faith and fair dealing a claim sounding in state common law.  *See, e.g.*, *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-CV-5263, 2017 WL 3600425, at *1 (S.D.N.Y. Aug. 18, 2017) (bifurcating claims pertaining to a federal question from the plaintiffs' state "common law claims of . . . breach of implied covenants of good faith and fair dealing."); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 61 (S.D.N.Y. 2016) ("In addition to their antitrust claim, Plaintiffs allege state-law claims . . . for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and tortious interference with contract."); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 572 (E.D.N.Y. 2011) (referring to "state-law claims of . . . breach of the implied covenant of good faith" as different from causes of action arising from federal questions).

Because these claims are both state common law claims, it cannot be said that the facts or allegations arise under federal law.  Therefore, the Court lacks federal question jurisdiction.  *See Johnson v. Secure Pawn Shop*, No. 19-CV-8832, 2019 WL 6619307, at *2 (S.D.N.Y. Dec. 3, 2019) ("[The] [p]laintiff invokes the Court's federal-question jurisdiction. . .  Those allegations do not suggest any claim arising under federal law.  [The] [p]laintiff therefore cannot invoke federal-question jurisdiction."), *appeal dismissed*, No. 19-4270, 2020 WL 3272971 (2d Cir. May

7, 2020); *Suarez*, 2021 WL 603048, at *2 (reviewing the plaintiff's complaint and finding that "she alleges no facts that suggest that any of her claims fall under federal law.  Thus, th[e] [c]ourt lacks federal-question jurisdiction to consider [the] [p]laintiff's claims."); *Suarez v. Feistman*, No. 20-CV-11052, 2021 WL 664983, at *2 (S.D.N.Y. Feb. 17, 2021) (holding that because the plaintiff "allege[d] no facts that suggest that any of her claims fall under federal laws[,] [t]he Court therefore lacks federal-question jurisdiction to consider [the] [p]laintiff's claims"); *Xuejie He v. Off. of New York City Comptroller*, No. 18-CV-7806, 2018 WL 11298985, at *2 (S.D.N.Y. Nov. 6, 2018) ("Even though [the] [p]laintiff attempts to invoke the Court's federal question jurisdiction by checking the box on the complaint form . . . , it is clear that the complaint does not present an issue of federal law."), *vacated in part on other grounds*, 2019 WL 1620691 (S.D.N.Y. Apr. 16, 2019).

### b.  Diversity Jurisdiction

A finding that no federal question jurisdiction exists is not the end of the inquiry.  Rather, pursuant to its aforementioned duty to construe pro se pleadings liberally and interpret them to raise the strongest claims that they suggest, *see* supra II.A & n.4, the Court is obligated to consider whether it can adjudicate this case pursuant to diversity jurisdiction, even if Plaintiffs do not allege diversity as a basis for subject matter jurisdiction.  *See, e.g.*, *Suarez*, 2021 WL 664983, at *2 ("Although [the] [p]laintiff does not invoke the Court's diversity jurisdiction, the Court also considers whether she alleges facts sufficient to do so."); *Seniw v. Cannavino*, No. 20-CV-01405, 2021 WL 1946429, at *4–5 (D. Conn. May 15, 2021) (evaluating diversity jurisdiction notwithstanding that the plaintiff solely alleged federal question jurisdiction); *Adames v. Taju*, 80 F. Supp. 3d 465, 468 (E.D.N.Y. 2015) (same).  This is especially true because "the allegations suggest that Plaintiff is asserting claims that arise under state law." *Suarez*, 2021 WL 603048, at *2.

As noted above, for diversity jurisdiction to exist, the amount in controversy at issue must exceed $75,000 and the cause of action must be between: (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state and citizens of a state or different state.  28 U.S.C. § 1332(a).  Courts are to "strictly construe the diversity statute."  *Romanella v. Hayward*, 114 F.3d 15, 16 (2d Cir. 1997) (citing *Healy v. Ratta*, 292 U.S. 263 (1934)).

When an action involves more than one plaintiff and/or one defendant, "diversity jurisdiction is available only when *all* adverse parties to a litigation are *completely* diverse in their citizenships."  *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (emphases added) (citation omitted); *see also Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show 'complete diversity' – that is, that it does not share citizenship with any defendant.").  "Therefore, in a case with multiple defendants, if a single defendant is from the same state as the plaintiff, the district court loses diversity jurisdiction over the entire action."  *Phoenix Four, Inc. v. Strategic Rsch. Corp.*, 446 F. Supp. 2d 205, 212 (S.D.N.Y. 2006) (citing *Exxon Mobil*, 545 U.S. at 553).  Said otherwise, "[t]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (italics and quotation marks omitted) (quoting *Exxon Mobil*, 545 U.S. at 564)).

For this reason, the Court lacks diversity jurisdiction in this case as pled.  "Plaintiff[s'] [C]omplaint does not allege sufficient facts to suggest that the [P]arties are diverse, that is, that 'there is no plaintiff and no defendant who are citizens of the same State.'"  *Johnson*, 2019 WL

13

6619307, at *3 (quoting *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)).

Indeed, by Plaintiffs' own admission, both Plaintiffs and Northeast Transport are citizens of New

York.  (*See* Compl. §§ 3.3, 3.5 (declaring Plaintiffs and Northeast Transport both as New York

residents).)  Therefore, the Court cannot conclude that the requirements for diversity jurisdiction

have been met.  *See, e.g.*, *Johnson*, 2019 WL 6619307, at *3 (concluding that because both the

plaintiff and the defendant are "citizen[s] of New York State, the parties are not diverse, and this

Court lacks diversity jurisdiction to consider [the] [p]laintiff's state-law claims."); *Garrett v. W.*

*Union*, No. 19-CV-7500, 2019 WL 6619298, at *3 (S.D.N.Y. Dec. 3, 2019) (finding no diversity

subject matter jurisdiction because the "[p]laintiff's complaint suggests that the parties are not

diverse"); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 876 (S.D.N.Y. 1995)

("The Court does not have subject matter jurisdiction over this [counterclaim] action on the basis

of diversity of citizenship because . . .  the plaintiffs on the counterclaim[] and . . . the defendants

on the counterclaim[] are not completely diverse.").

### c.  Rule 21

"[A] federal court may 'salvage jurisdiction by removing, pursuant to Fed. R. Civ. P. 21,

a dispensable non-diverse party from a suit.'"  *Achtman v. Kirby, McInerney & Squire, LLP*, 464

F.3d 328, 334 (2d Cir. 2006) (alteration in original) (quoting *Herrick*, 251 F.3d at 330); *see also*

*Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989) ("It is well settled that Rule

21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at

any time, even after judgment has been rendered.").  As a New York resident, Northeast

Transport is the sole defendant that could be dropped in order to "preserve diversity

jurisdiction."  *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (citing

*Newman–Green*, 490 U.S. at 832).

"Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of a particular litigation." *Quantlab Fin., LLC, Quantlab Techs. Ltd. (BVI) v. Tower Rsch. Cap., LLC*, 715 F. Supp. 2d 542, 550 (S.D.N.Y. 2010) (quoting *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 90 (2d Cir. 1990)).  Though context-specific,

> Rule 19(b) lists four factors in determining whether a party is indispensable: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (a) protective provisions in the judgment; (b) shaping the relief; (c) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder."

*Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-CV-7153, 2015 WL 4508739, at *4 n.4 (S.D.N.Y. July 24, 2015) (quoting Fed. R. Civ. P. 19(b)).

<u>i.  Factors 1 and 2: Prejudice</u>

"The first two factors under Rule 19(b) require [] [c]ourt[s] to consider whether any prejudice would result to [the dropped defendant] or any other defendant as a result of [that defendant's] dismissal, and if so, the extent to which such prejudice can be alleviated." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 120 (S.D.N.Y. 2015).  The central role that Northern Transport allegedly played in the events that gave rise to the claims—signing the contract with Plaintiffs' company and contracting with Land-Air to effectuate the shipping—proves them to be a "primary cause of [Plaintiffs'] damages." *CP Sols.*, 553 F.3d at 159.  Thus, litigation in the absence of the primary cause of the damages at issue could prove prejudicial to Plaintiffs, who may be unable to prove their case in the absence of discovery from Northeast Transport, and to Northeast Transport itself, should they lack a zealous advocate to "champion its interest." *Id*. at 160; *see also Pujol v. Shearson/Am. Exp., Inc.*, 877 F.2d 132, 135 (1st Cir. 1989) (finding no prejudice to dropped subsidiary in part because parent company would adequately represent its

interests); *cf. Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir. 1977) (finding no prejudice to dropped parties because "counsel for those remaining in the case will be no less vigorous in their advocacy because they represent two fewer persons").

To that end, because of Northeast Transport's centrality to the facts at issue, Plaintiffs and Land-Air may well need to litigate against Northeast Transport in the future concerning this incident.  Allowing this suit to continue in its absence therefore invites a "substantial" "risk of duplicative discovery and 'wasteful litigation,'" creating monetary and resource-related prejudice.  *Kips Bay*, 2015 WL 4508739, at *5 (quoting *Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.*, No. 14-CV-03303, 2014 WL 7004033, at *3 (S.D.N.Y. Dec. 11, 2014)); *see also Nolan v. Olean Gen. Hosp.*, No. 13-CV-333-A, 2013 WL 3475475, at *1 (W.D.N.Y. July 10, 2013) (declining to drop a party because "dismissal of the non-diverse defendants pursuant to Fed. R. Civ. P. 21 to establish complete diversity of citizenship would result in duplicative, wasteful litigation in federal and state courts that could result in conflicting rulings.").  Therefore, the first two factors weigh against moving forward in this action without Northeast Transport.

### ii.  Factor 3: Adequacy

With respect to the third factor, "[a]dequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'"  *CP Sols.*, 553 F.3d at 160 (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008)).  The Supreme Court has recognized this factor as embodying the "'social interest in the efficient administration of justice and the avoidance of multiple litigation' . . . that has 'traditionally been thought to support compulsory joinder of absent and potentially adverse claimants.'"  *Republic of Philippines*, 553 U.S. at 870 (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737–738 (1977)).  This factor too countenances against dropping Northeast Transport, as "[g]oing forward with the action without [it] would not

16

further the public interest in settling the dispute as a whole because [it] would not be bound by the judgment in an action where [it] w[as] not [a] part[y]." *Id.* at 870–71.

### iii.  Factor 4: Alternative Forums

The fourth and final factor is "the availability of an adequate remedy in an alternative forum if the suit is dismissed." *Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 499 (S.D.N.Y. 2021).  In context, the availability of an alternative forum favors dismissal.  *See id.*  This case was previously adjudicated on preemption grounds in state court. (*See* Statement ¶¶ 10–12.)  In its opinion, the State Supreme Court held that Plaintiffs' "action is improperly venued in the State Court system and should be pursued in Federal Court."  (McGay Decl. Ex. 1 at 10.)[5]  The ruling is straightforward and narrow: it says only that the Federal Aviation Administration Authorization Act (FAAAA) mandates that the company bring a federal claim in federal court.  Said differently, "[w]ere the case to be dismissed for lack of diversity jurisdiction, [Plaintiffs] would be free to re-file it" in federal court as an FAAAA action.  *Tutor*, 525 F. Supp. 3d at 499.  Therefore, "it does not appear that [Plaintiffs] would be deprived of an adequate remedy were this action dismissed."  *Quantlab*, 715 F. Supp. 2d at 551.

The Second Circuit has stated that "district court[s] should take a 'flexible approach' under Rule 19(b) when deciding whether parties are indispensable and that 'very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their [removal] makes just resolution of the action impossible.'"  *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) (quoting *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir. 1987)).  But given the

---

[5] "The Court is . . . entitled to take notice of matters of public records" such as the state court decision at issue when deciding a motion to dismiss.  *Pilla v. Gilat*, No. 19-CV-2255, 2020 WL 1309086, at *5 (S.D.N.Y. Mar. 19, 2020) (collecting cases).

centrality of Northeast Transport's role in the events giving rise to the action as well as Plaintiffs' ability to re-file their claims in federal court under the FAAAA, this case is the rare example in which the Court must conclude that it cannot assert diversity jurisdiction and that such jurisdiction beyond salvation. *See Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 62 F. Supp. 2d 1116, 1122–32 (S.D.N.Y. 1999) (dismissing case for lack of diversity jurisdiction because the defendants were nondiverse and indispensable, notwithstanding the defendants' attempts to find alternatives to preserve jurisdiction).

Absent diversity or federal question jurisdiction, no subject matter jurisdiction exists; accordingly, the Court must grant the Motion and dismiss the claims. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety"); *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (concluding that "the district court properly dismissed the complaint" when both a plaintiff and one of multiple defendants were deemed citizens of New York and where no federal claims were alleged, thereby frustrating subject matter jurisdiction); *Suarez*, 2021 WL 664983, at *2; ("Because [the] [p]laintiff does not allege a claim under federal law and she fails to show that complete diversity of citizenship exists between her and the defendants, the Court dismisses this action for lack of subject-matter jurisdiction."); *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 472–73 (S.D.N.Y. 2013) (holding that, where no federal question was pled, and where "the Court finds that the adverse parties in this action are not completely diverse in their citizenship because [some] defendants . . . are citizens of New York, as are the plaintiffs[,] the Court finds that no subject-matter jurisdiction exists, unless the lack of diversity jurisdiction can be cured.").

2.  Alternative Grounds for Dismissal: Standing, Preemption, and Legal
Implausibility of Punitive and Consequential Damages

Notwithstanding the Court's conclusion that it lacks subject matter jurisdiction over this

action, the Court also addresses Northeast Transport's alternative grounds for dismissal:

standing, preemption, and legal implausibility of punitive and consequential damages.

a.  Standing

Northeast Transport is correct that New York law clearly distinguishes a corporation

from its shareholders.  (*See* Def.'s Mem. 5 (citing New York Business Corporations Law §

202).)  Pursuant to this bifurcation of entity and owner, "[a] shareholder—even the sole

shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones*

*v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987) (collecting cases).

Thus, Northeast Transport argues, Plaintiffs lack standing to sue.  (*See* Def.'s Mem. 5–7.)

Plaintiffs do not substantively dispute this point; in fact, they outright concede that

Plaintiffs bring this suit as individuals and not a corporate entity.  (*See* Pls.'s Mem. ¶ 8

("Defendant's Counsel, in its [brief], refers to the fact that Little Rabbit is not a party in this case.

That is correct.").)  Instead, Plaintiffs argue that Barton is the "sole owner and proprietor of

Little Rabbit" and is effectively suing as a unified entity having been injured coextensively with

the corporate entity.  (*Id*.)

The Court is not without sympathy for Plaintiffs' alleged personal injury as the sole

proprietors of the corporation allegedly harmed by the events giving rise to this action.

However, such an injury, even if true, cannot overcome a lack of standing.  Where proprietors of

a business sue to remedy an injury the business sustained, such plaintiffs "do[] not have standing

to sue on the basis of that injury, because the corporation has a separate legal existence that

cannot be ignored, even by the sole shareholder." *Blakeslee v. Royal Ins. Co. of Am.*, No. 93-

CV-1633, 1995 WL 122724, at *3 (S.D.N.Y. Mar. 22, 1995) (collecting cases); *Gosain v. Texplas India Priv. Ltd.*, No. 09-CV-4172, 2019 WL 5722051, at *7 (S.D.N.Y. Feb. 4, 2019) ("Even where a plaintiff is the majority or sole shareholder of a corporation, the plaintiff will not have standing to pursue a claim where he cannot show that the defendant caused him an injury distinct from any injury to the corporation."), *report and recommendation adopted*, 393 F. Supp. 3d 368 (S.D.N.Y. 2019); *Gabayzadeh v. Glob. Equip. & Mach. Sales Inc.*, No. 18-CV-3851, 2019 WL 5880639, at *3 (S.D.N.Y. Jan. 28, 2019) (dismissing individual plaintiff's claims because the company, not the plaintiff, "was injured by the losses described in the [c]omplaint"); *Alphas v. City of New York Bus. Integrity Comm'n*, No. 15-CV-03424, 2017 WL 1929544, at *3 (S.D.N.Y. May 9, 2017) ("[A] shareholder —even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987)).   Accordingly, if not for a lack of subject matter jurisdiction, the Court would still have to dismiss Plaintiffs' action for lack of standing.  *See Jones*, 836 F.2d at 736; *Gosain*, 2019 WL 5722051, at *7; *Gabayzadeh*, 2019 WL 5880639, at *3; *Gianascio v. Giordano*, No. 99-CV-1796, 2003 WL 22999454, at *6 (S.D.N.Y. Dec. 19, 2003) (holding, under New York law, that the sole shareholder of a corporation did not have standing to assert claims where the "alleged wrongs [were] suffered by the corporation, not by plaintiff personally"); *see also Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) (summary order) (dismissing individual plaintiff's claims because "absent a direct individual injury, a company's member lacks standing to sue for an injury to the company."); *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11–12 (2d Cir. 2015) (summary order) (affirming district court decision that a plaintiff lacked standing to bring fraud and unjust enrichment claims against defendants because, even accepting facts as pleaded, plaintiff could

not "show a particularized injury . . . distinct from any injury to [the plaintiff's] solely-owned company").

## b.  Preemption

Setting aside concerns of jurisdiction and standing, Plaintiffs' claims are also preempted by the FAAAA.  The pertinent provisions of the FAAAA are, as a whole, "commonly termed the Carmack Amendment."  *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1412 n.6 (7th Cir. 1987).  "The Carmack Amendment, enacted in 1906, 'governs the liability of common carriers for loss or damage to goods shipped or transported in interstate commerce.'"  *Travelers Indem. Co. of Illinois v. Schneider Specialized Carriers, Inc.*, No. 04-CV-5307, 2005 WL 351106, at *3 (S.D.N.Y. Feb. 10, 2005) (quoting *Calka v. North American Van Lines, Inc.*, No. 00-CV-2733, 2001 WL 434871, at *2 (S.D.N.Y. Apr. 27, 2001)).  The Amendment reads, in relevant part: "a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier."  49 U.S.C § 14501(c)(1).  By drafting the Amendment in such broad terms, the Second Circuit concluded,

> Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability.  The Carmack Amendment did this both by establishing a single uniform regime for recovery by shippers directly from [the] interstate common carrier in whose care their [items] are damaged, and by preempt[ing] [the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment.

*Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (internal quotation marks and citations omitted); *see also Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913) ("Almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."); *Ash v. Artpack Int'l, Inc.*, No. 96-CV-8440, 1998 WL 132932, at *4 (S.D.N.Y.

21

March 23, 1998) ("The Carmack Amendment is an example of a statute that completely preempts the field it occupies.").

Pursuant to this understanding of the Amendment's "broad pre-emptive purpose," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992), "[i]t is . . . well settled that Congress clearly intended the Carmack Amendment to preempt all state law claims against interstate carriers *for loss or damage to goods during shipping*." *Travelers,* 2005 WL 351106, at *3 (emphasis added); *see also Calka*, 2001 WL 434871, at *2 ("The Carmack Amendment preempts state and federal common law claims against a common carrier for loss or damage to goods shipped or transported in interstate commerce.") (citation omitted).

Notwithstanding this interpretation, however, the Amendment does not preempt state and non-FAAAA federal claims arising out of a carrier's breach of "its own self[-]imposed undertakings." *In re EVIC Class Action Litig.*, Nos. M-21-84, MDL-1339, 00-CV-3811, 02-CV-2703, 2002 WL 1766554, at *9 (S.D.N.Y. July 31, 2002) (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)) (deciding that an individual could maintain a breach of contract suit where a carrier imposed a contractual term via collective bargaining outside state law obligations). Absent evidence of such a self-imposed obligation, suits sounding in state law are preempted, and causes of action to recover for such lost or damaged goods would be confined to claims made under the Carmack Amendment. *See id.* at *8–9 (concluding that the "state causes of action sounding in fraud and misrepresentation are preempted by the FAAAA" while the aforementioned breach of contract claims are not as a result of self-imposed obligations).

Plaintiffs direct the Court to a case from the Central District of California that they say supports their claim that their causes of action are not preempted. (*See* Pls.'s Mem. ¶¶ 16–18 (citing *Factory Mut. Ins. Co. v. One Source Logistics, LLC*, No. 16-CV-6385, 2017 WL 2608867

(C.D. Cal. May 5, 2017).)   And, indeed, the court in that case found that state law negligence

claims were not preempted by the Amendment.   *See Factory Mut.*, 2017 WL 2608867, at *7.

    To begin, it is an axiomatic principle of American jurisprudence that district courts are

"bound by the decisions of the Supreme Court of the United States and those of the Circuit Court

of Appeals in their own circuit, but are not bound by those of a federal court of co-ordinate

jurisdiction, or even the decisions of a federal Circuit Court of Appeals in another circuit."

*Cont'l Sec. Co. v. Interborough Rapid Transit Co.*, 165 F. 945, 959–60 (S.D.N.Y. 1908)); *see*

*also Langsam v. Vallarta Gardens*, No. 08-CV-2222, 2009 WL 2252612, at *2 (S.D.N.Y. July

28, 2009) ( noting that the District Court for the Southern District of New York is bound only by

"controlling decisions," which "include decisions from the United States Court of Appeals for

the Second Circuit; they do not include decisions from other circuits or district courts, even

courts in the Southern District of New York").   The Court must therefore adhere to and follow

precedent set by the Second Circuit, while jurisprudence from elsewhere—such as the case to

which Plaintiffs direct the Court—may only be considered for its persuasive value when the

Second Circuit has not issued such precedent.   *Cf. Zorrilla v. Carlson Restaurants Inc.*, 255 F.

Supp. 3d 465, 476 (S.D.N.Y. 2017) (looking to "persuasive caselaw" in other jurisdictions

because "[t]he Second Circuit . . . has not issued a precedential opinion" on the question at

issue).   But as stated above, the Second Circuit has expressly interpreted the Carmack

Amendment as "preempt[ing] [the] shipper's state and common law claims against a carrier for

loss or damage to goods during shipment."   *Project Hope*, 250 F.3d 67, 73 n.6 (2d Cir. 2001)

(quoting *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000)); *see also*

*Commercial Union Ins. Co. v. Forward Air, Inc.*, 50 F. Supp. 2d 255, 257 (S.D.N.Y. 1999)

("[T]he Carmack Amendment so occupies the field that the Second Circuit has concluded that

the statutory scheme provided by the Carmack Amendment is the exclusive remedy whereby a shipper may seek reimbursement from a carrier for damage to his or her property that occurred during shipment.").  Therefore, while the Court commends Plaintiffs—who are indeed acting pro se—for finding apposite caselaw, the Court remains bound by the Second Circuit's interpretation of the Amendment's preemptive reach.

Plaintiffs' state law claims here pertain to generalized state law concerns rather than particularized concerns inherent in the contract.  *Cf. Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 555 (S.D.N.Y. 2014) ("New York law implies a covenant of good faith and fair dealing in all contracts.").  Accordingly, notwithstanding jurisdictional and standing concerns, Plaintiffs' state law claims of negligence and breach of the implied covenant of good faith, would be preempted under applicable precedent.  *See Calka*, 2001 WL 434871, at *2 (finding a plaintiff's claims arising from damaged goods shipped and sounding in "state law are preempted"); *see also Gordon Companies, Inc. v. Fed. Express Corp.*, No. 14-CV-00868, 2015 WL 13727903, at *2 (W.D.N.Y. Sept. 10, 2015) (concluding that a plaintiff's state law claims are "preempted, as [they] rel[y] upon a doctrine external to the agreement itself.").

### c.  Punitive and Consequential Damages

Finally, the Court also notes that, setting aside the above-identified issues, Plaintiffs' prayer for relief in the form of punitive and consequential damages, (*see* Compl. § IV), is unsupported by the facts alleged.  To be sure, "[a]n alleged breach of the implied covenant of good faith and fair dealing may support an award of punitive damages."  *Perlbinder v. Vigilant Ins. Co.*, 141 N.Y.S.3d 141, 147 (App. Div. 2021) (citation omitted).  But, broadly speaking, "[p]unitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference

24

to civil obligations.'" *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) (quoting *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 943 (N.Y. 1994)); *see also In re Moran Towing Corp.*, 984 F. Supp. 2d 150, 187 (S.D.N.Y. 2013) ("Punitive damages may only be awarded where a defendant's conduct is intentional, wanton and reckless, or constitutes gross negligence"), *amended*, 996 F. Supp. 2d 221 (S.D.N.Y. 2014); *cf. Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409 (2009) ("Punitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct."). The Court agrees with Northeast Transport that Plaintiffs failed to allege any facts that rise to this level. (*See* Def.'s Mem. 10–11.) Notwithstanding the allegation that Northeast Transport's representative minimized Plaintiffs' well-founded (and ultimately realized) concerns, (Compl. § III.12), this fact alone does not rise to the level of "wanton dishonesty as to imply a criminal indifference to civil obligations." *Rocanova*, 634 N.E.2d at 943. Therefore, were it not for the above-discussed issues with Plaintiffs' claims, Plaintiffs' prayer for punitive damages would still fall short.

The same is true for consequential damages. Under New York law, "[t]o collect consequential damages . . . a plaintiff must demonstrate that the parties contemplated those special damages as the probable result of the breach at the time of or prior to contracting." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 618 F. Supp. 2d 280, 292 (S.D.N.Y. 2009). As evidenced by the Bill of Lading, which expressly excluded consequential damages, Plaintiffs failed to allege any facts suggesting that such damages were foreseeable or contemplated by them and at the time they reached the contract. (*See* Def.'s Mem. 11.) Thus, Plaintiffs' demand for consequential damages would also be denied.

### III.  Conclusion

For the foregoing reasons, Northeast Transport's Motion is granted.  Because this is the first adjudication of Plaintiffs' claims, the dismissal is without prejudice.  *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").  Should Plaintiffs choose to file an amended complaint, they must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain all of the claims and factual allegations Plaintiffs wish the Court to consider.  If Plaintiffs fail to abide by the 30-day deadline, this Action could be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 33), and to mail a copy of this Opinion & Order to Plaintiffs' address listed on the docket.

Additionally, as indicated in Footnote 1, Defendant Land-Air did not join the instant Motion and has not yet appeared in this Action.  However, the Court finds that dismissal of Plaintiffs' claims against Land-Air is proper in light of the aforementioned alternative grounds for dismissal.  *See supra* II.B.2.  As such, Plaintiffs have 30 days from the date of this Order to show cause as to why their claims should not be dismissed against Land-Air.

SO ORDERED.

DATED:       January 24, 2022
             White Plains, New York

_____
       KENNETH M. KARAS
     United States District Judge

26